**Doris Elaine BROWN et al., Plaintiffs-Appellants,**

v.

**The BOARD OF EDUCATION OF the CITY OF BESSEMER, ALABAMA, et al., Defendants-Appellees.**

**No. 71–2892.**

United States Court of Appeals, Fifth Circuit.

July 11, 1972.

David H. Hood, Jr., Bessemer, Ala., Oscar W. Adams, Jr., U. W. Clemon, Birmingham, Ala., Jack Greenberg, James M. Nabrit, III, Norman Amaker, Norman J. Chachkin, New York City, Theodore Garrish, David L. Norman, Asst. Atty. Gen., Brian K. Landsberg, Thomas M. Keeling, Michael A. Sterlacci, Dept. of Justice, Washington, D. C., for plaintiffs-appellants.

J. Howard McEniry, Bessemer Ala., for defendants-appellees.

Before THORNBERRY, CLARK and INGRAHAM, Circuit Judges.

BY THE COURT:

We are again faced with the school desegregation problems of the City of Bessemer, Alabama. On July 16, 1971, 5 Cir., 446 · F.2d 75, we vacated and remanded an appeal in this case to the district court for reconsideration in light of the Supreme Court's decision in Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). On remand the district court ordered the defendant Board to prepare a plan showing geographical zoning proposals and projected enrollment by race for all schools involved. The Board's plan was filed and after an informal conference the plan, as it related to secondary schools, was modified by the court in accordance with recommendations of the intervenor United States. The Board objected to the modification, mainly because it would be unable to transport students to the schools in their zones, and it thus filed a motion to amend the plan announced by the court from the bench.

The court amended its decree of August 30, 1971, and included the following provision:

"(d) In the event by September 10, 1971, transportation is not reasonably available at moderate cost to a student assigned to a high school facility which exceeds by at least 1.5 miles the distance from his place of residence to the other high school facility operated

by defendant Board of Education, that student shall be allowed upon request to the Board the right to attend the high school which is nearer to his residence. Distances to the two high schools from a student's place of residence shall be measured by road distance along paved roads which are in existence at the date of this order. In determining availability of transportation consideration shall be given to transportation as may hereafter be provided by action of the City Council of the City of Bessemer, by the City Board of Education of the City of Bessemer, by local civic or church groups, or other voluntary associations, or by groups of parents or persons interested in assisting in transportation, or by extension of routes of public bus services within the City of Bessemer. No requirement is made under this order directing that the City of Bessemer or the defendant Board of Education provide such transportation (this primarily due to the fact that neither governmental agency has in the past used busing to foster segregation of schools), but at the same time neither the City nor the City Board of Education shall in any wise restrict or discourage the providing of transportation through other sources and, for example, shall not refuse to give their consent to any application for extended bus routes from public bus facilities."

Plaintiffs appeal from the court's decree, asserting that the court erred by failing to require the Board to provide transportation for students who live considerable distances from the schools to which they are assigned in contravention of an otherwise efficacious desegregation plan. Plaintiffs also challenge the court's failure to require that transportation be provided for majority to minority transferees.

The School Board on the other hand urges that a school system which has never operated a transportation system, and that did not promote a dual system by use of buses, cannot be required to furnish transportation to meet the constitutional requirement of a unitary school system.

This court has recently spoken to the precise issue raised by this appeal. In United States v. Greenwood Municipal Separate School District, 460 F.2d 1205 (5th Cir., 1972), plaintiffs appealed from a district court refusal to order that transportation be provided to elementary students who were placed in noncontiguous school zones and required to attend school outside their neighborhoods. This court reversed, explaining:

"In Swann v. Charlotte-Mecklenburg Board of Education, supra, the Supreme Court explicitly held that a school district which elects to utilize a majority-to-minority transfer plan as a desegregation tool *must* provide free transportation to each student making a transfer under the plan. 402 U.S. at 26, 27, 91 S.Ct. at 1281, 28 L.Ed.2d at 572, 573. In discussing the pairing and noncontiguous zoning techniques ordered by the trial court in *Swann*, the Supreme Court approved the trial court's direction to the educational authorities that bus transportation be used to implement these techniques:

" 'In these circumstances, we find no basis for holding that the local school authorities may not be required to employ bus transportation as one tool of school desegregation. Desegregation plans cannot be limited to the walk-in school.' 402 U.S. at 30, 91 S. Ct. at 1283, 28 L.Ed.2d at 575.

" . . . It is implicit in the decisions of the Supreme Court and of this court that it is the responsibility of school officials to take whatever remedial steps are necessary to disestablish the dual school system, including the provision of free bus transportation to students required to attend schools outside their neighborhoods. The black elementary students who were refused free transportation by the district court's order are victims of the remnants of the dual system of schools

which existed for so long under the requirements of Mississippi constitutional and statutory provisions. No legitimate reason is put forth for forcing them and their parents to shoulder the burden of eliminating these vestiges of segregated schools in the circumstances present here." 460 F.2d at 1206.

See Brewer v. School Board of City of Norfolk Virginia, 456 F.2d 943, 946–947 (4th Cir., 1972), cert. den. 406 U.S. 905, 92 S.Ct. 1611, 31 L.Ed.2d 815 (1972).

■ The Board's argument that it lacks "the facilities, the buses, personnel or the know how to bus" is of no avail. The court below cannot compel a student to attend a distant school and then fail to provide him the means to reach the school, nor can it allow circumvention of the desegregation plan by wholesale exceptions to transfer provisions. To do so would render the entire plan of desegregation a futile gesture. This court has continually recognized the requirements laid down in *Swann, supra,* and Davis v. Board of School Commissioners of Mobile County, 402 U.S. 33, 91 S.Ct. 1289, 28 L.Ed.2d 577 (1971), that a district court utilize its broad equity power to fashion a remedy which will assure a unitary school system, and that, as in the instant case, this power encompasses transportation facilities. See, e. g., United States v. Greenwood Municipal Separate School District, *supra*; Acree v. County Board of Education of Richmond, 458 F.2d 486 (1972); Dandridge v. Jefferson Parish School Board, 456 F.2d 552 (5th Cir., 1972).

Accordingly the judgment of the district court, insofar as it refused to require the Board of Education and city to provide free transportation to students zoned to attend school outside their neighborhoods, or under majority to minority transfer provisions, is reversed and remanded with directions to require defendants to provide such transportation. Since the school term has just ended, this order will apply to the 1972–73 school year. The mechanics of the method to be employed by the defendants in discharge of this duty are left to the district court.

The mandate shall issue forthwith.

Reversed and remanded with directions.